(77 App. Div. 224.)

DWYER v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   December 5, 1902.)

1. BUILDING CONTRACT—PLEADING—VARIANCE.

A complaint alleged complete performance of a contract which provided that the architect's certificate that the work was satisfactory should be a condition precedent to right of payment.   On trial the plaintiff did not show a certificate, but gave evidence tending to show that it was unreasonably withheld.   *Held*, that plaintiff, not having laid foundation for such evidence in his complaint, originally or by amendment, was not entitled to recover on such contract on the theory stated.

2. SAME—CONSTRUCTION.

A contract expressly provided that the work should be done to the satisfaction of the commissioners and the architect appointed by them, and in accordance with the drawings and directions given and the specifications.   Following the specifications was the clause: "Generally.   The work is all to be performed in a thorough and mechanical manner, and rendered thoroughly water-tight, all to be subject to the approval of the architect."   *Held*, that the contractor's undertaking was to make the work water-tight only so far as a construction in accordance with the plans would produce such result.

3. SAME—CHANGE—EXTRA WORK.

The contractor having followed the specifications without the desired result, on being ordered to reconstruct was entitled to recover therefor.

4. SAME.

A contract providing that: "Such details on a large scale or full size as may be necessary to more fully explain the general drawings will be furnished to the contractor at the proper time during the performance of

79 N.Y.S.—2

the work." "The various drawings and this specification are intended to cover a complete and first-class job in every respect. Anything omitted in this specification and shown on the drawings, or vice versa, is to be done by the contractor without extra charge or expense,"—did not authorize the architect to change the plans.

5. SAME.

The provision in a contract with a board of commissioners that the contractor should make no claim for extra work, unless contracted for in writing, related to work concededly not within the contract, and not to changes in plans and specifications.

6. SAME—ESTOPPEL.

The board, having ordered work, were estopped from objecting that there was no written agreement regarding the change.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action on a contract by Thomas Dwyer against the mayor, etc., of New York City. From a judgment dismissing the complaint on the close of plaintiff's evidence, he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Charles J. Hardy, for appellant.
Chase Mellen, for respondent.

LAUGHLIN, J. The plaintiff contracted with the city of New York, through the commissioners of the department of public parks, for the construction of a boiler house and engine room for the Metropolitan Museum of Art. The complaint contains two causes of action. The first is to recover $669.30, the balance unpaid in the contract; and, second, for damages caused by the wrongful rulings, orders, and directions of the architect and board of park commissioners in requiring the plaintiff to do over again certain work which it is alleged he completed in accordance with the contract, plans, and specifications, and also compelling him to furnish extra work, labor, and materials under the wrongful claim that the same were embraced within the contract. The allegations of the complaint with reference to the first cause of action proceed upon the theory of complete performance by the plaintiff. The specifications forming a part of the contract expressly provide that the architect's certificate that the contract has been faithfully performed with reference to the materials furnished and work done should be·a condition precedent to the right of the plaintiff to payment for any part of the work. Upon the trial the plaintiff failed to show that the work was completed to the satisfaction of the architect, or that the latter had furnished a certificate to that effect. The complaint contains no allegation excusing the production of the architect's certificate. Evidence was offered, however, tending to show complete performance by the plaintiff in·accordance with the contract and specifications, and that the architect unreasonably withheld his certificate, insisting that the work had not been properly performed. The plaintiff made no motion to amend his complaint to conform to the proof in this regard. The judgment entered upon the nonsuit cannot be reversed unless the plaintiff established a prima facie case upon the complaint as it stood at the time the motion was grant-

ed, for he could only recover as matter of strict legal right according to the allegations of his complaint, even if the evidence would have justified an amendment and a recovery on another theory. The plaintiff was not entitled to recover on the theory of complete performance under this contract without the production of the architect's certificate, unless he laid the foundation in his complaint for the evidence excusing compliance in this regard. Weeks v. O'Brien, 141 N. Y. 199, 36 N. E. 185. It is true that in this case, as in the case of Weeks v. O'Brien, supra, developed the fact that this work was taken from the plaintiff and completed by the city pursuant to a notice claimed to have been given under the contract, and it further appears that the cost of completion was considerably less than the balance unpaid on the contract price. Had the plaintiff so elected, he would have been entitled to recover this balance in these circumstances without regard to the architect's certificate (Weeks v. O'Brien, supra); but he made no such election, and, so far as is disclosed by the record, his contention throughout the trial was that he was entitled to recover the full balance without deduction for any expenditure by the city. The court, therefore, committed no error in dismissing the complaint as to the first cause of action.

We think, however, that the proof warranted a recovery on the second cause of action. The complaint relating to this cause of action alleges, among other things, that:

"The defendant, through its officers and agents, would not permit the plaintiff to proceed and carry out the said contract in a reasonable, proper, and expeditious manner, but by and through the wrongful act, neglect, and default of the defendant, its officers and agents, the plaintiff was hindered and delayed, and put to great loss and expense, by reason of said wrongful act, neglect, and default, and was compelled to do his (plaintiff's) work at a largely increased cost by reason thereof. That among other things the defendant, its officers and agents, compelled the plaintiff to attempt to make a certain horizontal boiler flue, under the cellar floor of said boiler house, watertight, which was an impracticable thing to do, and not required by the plans and specifications of said contract; * * * compelled plaintiff to take down and rebuild horizontal flue at boiler house after the same had been built by plaintiff according to the said contract, and the plans and specifications thereof."

The plaintiff's testimony shows that he constructed this flue literally in accordance with the contract plans and specifications; that early in the construction of the work he notified the architect that the flue, if constructed according to the plans and specifications, would not be water-tight, as was evidently intended; that he was subsequently directed by the architect to complete the flue without any change or alteration of the plans and specifications therefor; that after completion it was ascertained that the flue was not water-tight, and the architect thereupon materially altered the plans and specifications with reference to the manner of constructing it, and directed the plaintiff to take it down and remove it, and reconstruct it in accordance with such altered plans and specifications; that plaintiff, insisting that he had performed his contract in this regard, and was under no obligation to do the work over again in a different manner, appealed to the board of park commissioners, protesting against the action of the architect, and was by them directed to reconstruct the work as required by the

architect; that he also notified the architect and the board of park commissioners that the flue would not be water-tight if constructed according to the amended plan and specifications; that he did reconstruct it in accordance therewith, and that the reasonable value of this work was $1,604.51. It is objected that the plaintiff cannot recover for this item for the reason that the flue as thus reconstructed was not water-tight. The contract expressly provided that the work should be done "to the satisfaction of the commissioners of the department of public parks and the architect appointed by them, and in accordance with the drawings, details, and directions given, or which may be given, by the architect, and in conformity with the specifications." The amended specifications require an excavation for the flue of sufficient width and depth to make it when completed of the size indicated on the plans, and further provided with reference to this flue as follows:

"Mason Work. Line up the sides of the excavation with 4 inches of brick, and cover the bottom of the flue with not less than 4 inches of rough concrete, composed of 3 parts of broken stone, 1 part clean sharp sand, and 1 part Portland cement, made smooth, ready to receive asphalt. After the asphalt has been applied, build 12" brick walls on both sides of the flue, laid in mortar as specified, and carry up to height required for roof beams. Pave the floor throughout, the brick grouted in in cement mortar.

"Asphalt. Cover the entire inside of flue, prepared as specified, with ½ inch of Seysel Rock Asphalt, or equally good and approved brand, applied hot, so put on as to absolutely cover all crevices and joints, and render the same impervious to water.

"Generally. The work is all to be performed in a thorough and mechanical manner, and rendered thoroughly water-tight, all to be subject to the approval of the architect."

The provisions of the original and amended specifications with reference to the flue being impervious to the water and water-tight were the same. The legal effect of this contract was that the contractor undertook to construct the flue in accordance with the plans and specifications, and he was to make it water-tight so far as a construction in accordance with the plans and specifications would produce that result, but he did not guaranty the efficiency of the plans and specifications in this regard. MacKnight Flintic Stone Co. v. City of New York, 160 N. Y. 80, 54 N. E. 661.

The specifications contain the following clause:

"Such details on a large scale or full size, as may be necessary to more fully explain the general drawings, will be furnished to the contractor at the proper time during the performance of the work."

"The various drawings and this specification are intended to cover a complete and first-class job in every respect. Anything omitted in this specification and shown on the drawings, or vice versa, is to be done by the contractor without extra charge or expense."

It is contended on the part of the city that these provisions authorized the architect to change the plans and specifications by detailed plans, and that they are authority for the changes which he made. This contention is untenable for two reasons: In the first place, it was not intended to authorize the change of either the specifications or plans by enlarged detail plans or drawings, but only to make more clear what might otherwise be obscure; and, secondly, the architect

was not authorized to make any change or alteration in the plans or specifications after the work had been done in accordance with the plans and specifications at the time of performing it.

It is further contended that this was extra work, and that, inasmuch as it was provided in the contract that the contractor should make no claim for extra work unless the same was agreed upon between the parties in writing, no recovery can be had therefor. That provision of the contract relates to work concededly not within the contract, and not to changes and alterations in the work intended to be covered by the agreement. Furthermore, it is not contended that the board of park commissioners did not have authority to contract for this work, even if it were extra work; and the board itself, which made the contract, having authorized and directed the work, would be estopped from contending that the plaintiff could not recover therefor because the contract required that an agreement in writing should be made concerning the same. The architect wrongfully insisted that the plaintiff had not performed his contract with reference to the construction of the flue, not because he had not followed the plans and specifications, but because of the architect's blunder in preparing plans and specifications that would not accomplish the object desired, to wit, a water-tight flue. On this branch of the case the plaintiff was entitled to recover, on the authority of Gearty v. Mayor, etc., 171 N. Y. 61, 63 N. E. 804. There is no basis for a distinction between that case and this. There, as here, the contract related to the performance of work for the park department, and the provisions of the specifications, so far as material, are almost identically the same; the only difference being that that case related to a pavement, and the engineer had supervision of the construction, and the word "engineer" appears in the specifications where the word "architect" appears in the case at bar.

It follows, therefore, that the plaintiff made out a prima facie case for a recovery with reference to the cost of reconstructing this flue, and it was error to dismiss the complaint. In this view, it becomes unnecessary to consider the sufficiency of the complaint or proof with reference to the other items of damages claimed in the second cause of action.

The judgment appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

O'BRIEN and HATCH, JJ., concur.

INGRAHAM, J. (dissenting). The plaintiff made a contract with the defendant whereby he was to construct a boiler house and engine room in the Central Park, in the city of New York, for the use of the Metropolitan Museum of Art, for which the defendant agreed to pay the plaintiff the sum of $47,700. There are two causes of action alleged in the complaint. The first is to recover the balance alleged to be due under the contract; and the second is to recover the damages sustained by the plaintiff by reason of the refusal of the defendant to permit him to carry out the contract in a reasonable, proper, and expeditious manner. As a first cause of action, the complaint alleges the making of the contract; that the

plaintiff had fully performed all the conditions and covenants of the said agreement, and fully completed the work in accordance with the terms and conditions of the contract, "and the same had been ·duly accepted by the defendant and its officers, and its acceptance ·duly certified in writing"; that the amount to be paid by the contract is $47,700, of which the plaintiff has received the sum of $47,030.70, leaving a balance due from the defendant to the plaintiff of $669.30, for which sum plaintiff demands judgment. For a second cause of action the plaintiff alleges that, while he was endeavoring in good faith to carry out the said contract in accordance with the terms and conditions thereof, "the defendant, through its officers and agents, would not permit the plaintiff to proceed and carry out the said contract in a reasonable, proper, and expeditious manner, but by and through the wrongful act, neglect, and default of the defendant, its officers and agents, the plaintiff was hindered and delayed, and put to great loss and expense, by reason of said wrongful act, neglect, and default, and was compelled to do his (plaintiff's) work at a largely increased cost by reason thereof." The answer admits the making of the contract; alleges that the plaintiff entered into its performance, and, except as specified, has fully completed the said work in accordance with the terms and conditions of the contract; admits that the defendant has paid the plaintiff on account of the contract the sum of $47,030.70 and no more; and then alleges that, while the plaintiff was proceeding to execute and carry out the said contract, he "willfully and wrongfully neglected and refused to construct and complete in a proper manner, in accordance with his contract and the specifications and directions of the architect, a certain horizontal boiler flue under the cellar of the said boiler house, and to do certain asphalting to the easterly wall of the boiler house, and to repair the roof thereof, whereupon the ·commissioners of the department of public parks, by virtue of the said provisions of the said contract, duly notified the plaintiff to discontinue all the work in his contract on such portion of said work; that thereupon the said plaintiff did discontinue work upon said portion or part, and the commissioners thereupon placed upon the said part to work at and complete the same another person, to wit, one William L. Crowe, and the same was completed by such·person; that the reasonable and proper cost of completing the same was the sum of $553.30, as ·evidenced by the certificate of the architect of the defendant"; that the plaintiff also refused to carry out said contract, in that he neglected to set up one steam jet pump for underground flue pipe fittings and valves, whereupon the said commissioners duly notified the plaintiff, in accordance with the terms of said contract, to discontinue all work thereunder, and the commissioners thereafter employed another person to do the work; that the reasonable and proper cost of completing the same was the sum of $116, as evidenced by the certificate of the architect, and that by reason thereof the defendant deducted the amount paid for the completion of the contract from the amount due to the plaintiff, which is the difference between the amount to be actually paid to the plaintiff upon the completion of the contract and that actually paid to him.

By the contract, which was introduced in evidence, the plaintiff covenanted that he would complete the entire work to the satisfaction of the commissioners of the department of public parks, and in substantial accordance with the specifications and plans, and that he would not ask, demand, sue for, or recover for the entire work any extra compensation beyond the amount payable for the whole of the work in this contract stipulated, which shall be actually performed at the price therefor therein agreed upon and fixed; and further agreed that the certificate of the architect, appointed by the commissioners of the department of public parks, in charge of the work, should be the account by which the amount of materials furnished and the work done should be computed, and that the architect's certificate that the same had been faithfully performed so far in accordance with the requirements of the contract, and filed with the said department, should be a condition precedent to the right "of the said party of the second part to payment for the work or any part thereof done by him under this agreement"; and further agreed that the work was to be done to the satisfaction of the commissioners of the department of public parks and the architect, "and the work done not satisfactory to the said commissioners and the architect shall be immediately made good by the said party of the second part [plaintiff], or if he shall neglect or refuse to remove the materials or such work or materials as may be condemned by the architect when notified so to do by the commissioners of the department of public parks, by a written notice to be served on the contractor, either personally or by leaving it at his residence or with his agent in charge of the work, then the commissioners of the department of public parks may remove, or cause the same to be removed and satisfactorily replaced, by contract or otherwise, as they may deem expedient, and charge the expense thereof to the aforesaid contractor, and the expense so charged shall be deducted and paid by the parties of the first part out of such moneys as are or may become due under this agreement"; and also agreed that he would not be entitled to demand or receive payment for any portion of the aforesaid work until the same was fully completed in the manner set forth in the agreement, and such completion should be duly certified by the architect in charge of the work as provided by the contract; that "the action of the architect by which the said contractor is to be bound and concluded according to the terms of this contract shall be that evidenced by his final certificate"; and thereupon the defendant agreed to pay to the plaintiff "the whole of the moneys accruing to the said party of the second part under this agreement, excepting such sum or sums of money as may be lawfully retained under any of the provisions herein contained for that purpose."

There was no allegation in the complaint that the certificate of the architect as required by this contract had been furnished, or that such certificate had been demanded of the architect and the delivery thereof unreasonably refused; the only allegation being that the plaintiff had fully completed said work in accordance with the terms and conditions of the said conditions of the said contract, and that

the same had been duly accepted by the defendant and its officers, and its acceptance duly certified in writing. The contract having made the certificate of the architect a condition precedent to the right of the plaintiff to payment upon the work or any part thereof done by him under the agreement, and the obligation of the defendant to pay the plaintiff being limited to the amount allowed by the final certificate of the architect to justify the recovery of any amount due under the contract, the plaintiff was bound to allege and prove the delivery of the certificate by the architect, or the fact that the work had been actually performed and that the architect had unreasonably refused to deliver such a certificate. The plaintiff having depended upon the contract and introduced it in evidence, his cause of action to recover the amount due under it must necessarily fail unless he produced the certificate of the architect, which, under the contract, was an essential prerequisite to his right to receive the contract price. Upon the cross-examination of the plaintiff, he testified that he carried out the architect's directions in accordance with certain modified specifications and plans, and that a paper shown to him was the final certificate of the architect. That paper, however, was not introduced in evidence, nor was there any proof, except this statement of the plaintiff that a final certificate had been given by the architect, or that by it any amount was due to the plaintiff. There were introduced in evidence by the defendant two certificates of the architect, by one of which it appeared that one Clarke had furnished one steam jet pump at a cost of $116, and by the other that one Crowe had furnished certain work, labor, and materials in excavating and refilling and cementing the wall in the boiler flue at a total cost of $553.30. These two items thus certified by the architect aggregated the amount retained by the defendant, and appear to be the items which the plaintiff seeks to recover by his first cause of action. It is quite clear, therefore, that owing to the failure to show that a certificate of the architect was furnished, or that one was unreasonably refused, the plaintiff must fail in his first cause of action.

The second cause of action is for the damages sustained by the plaintiff by reason of the failure of the officers of the defendant to allow him to complete his contract. There is no allegation in the complaint that plaintiff has performed extra work. It is the damages sustained by the refusal of the defendant to permit the plaintiff to proceed and carry out the contract in a reasonable, proper, and expeditious manner that plaintiff seeks to recover by this second cause of action. This allegation would seem to be sufficient under the principle established in Gearty v. Mayor, etc., 171 N. Y. 61, 63 N. E. 804, and we have to determine whether the evidence is sufficient to sustain a recovery thereon. The plaintiff testified that he entered into this contract in September, 1892, and commenced the completion of the contract; that on December 7, 1892, he wrote a letter to the architect in which he stated that he was building the horizontal flue for the boiler house, but was afraid that water would come through, causing the flue to be damp or wet all the time, and asking the architect if he desired a change of the construction so as to overcome this pressure. In reply to this the architect stated that

the contract called for a construction which, if faithfully carried out, will make this flue water-tight, and shortly afterward the architect wrote to the plaintiff directing him to stop work for the winter. Subsequently, in March, 1893, the plaintiff, having resumed work, wrote to the architect saying that he had partly built the flue in accordance with his contract, but that it was not and would not be water-tight, and asking for advice in regard to the matter. The architect subsequently called the plaintiff's attention to the water in this flue, directing him to cause it to be pumped out. In reply the plaintiff wrote that there was no special or general provision in the contract for taking care of this water, and saying that it would be unjust to ask him to pump it out without compensation, and refused to do so, and the plaintiff refused to do any further work in connection with the flue, telling the architect that he had constructed the flue in accordance with the contract, and that he refused to take it down and construct it in a different way. Subsequently, in November, 1893, the architect gave to the plaintiff an additional specification for the building of this flue. The plaintiff testified that the flue, as shown on the details or plans delivered November 13, 1893, differs from that shown upon the plans annexed to the original contract inasmuch as it appears upon the drawing of November 13, 1893, that the walls were to be built in two sections, the inner a 4-inch wall, the outer a 12-inch wall, with three-fourths of an inch of asphalt between them, while the plan submitted under the original contract provided for a 16-inch wall without any asphalt; that the modified plan also shows under the floor of the flue a foundation of asphalt. He further testified that when he received these modified specifications and plans he refused to do anything with it, and appealed to the park board. He went before the park commissioners, when he was directed to go ahead and complete the work according to the new specifications, and the plaintiff testified that he did complete it according to such new specifications. In March or April, 1894, he claimed that the completion of the work under the new specifications was an extra expense to him of $1,604.51, which is part of the damages included in the second cause of action. According to his testimony, what the plaintiff complains of seems to be that, having partially constructed this boiler flue according to the contract, the architect refused to accept it as a compliance with the provisions of the contract, but insisted that it should be built as provided in some supplemental plans and specifications, and that the plaintiff complied with such direction of the architect, enforced, as it was, by an order of one of the commissioners of public parks, and that for such work he was entitled to recover. But, as before stated, no such cause of action was alleged in the complaint. The plaintiff also testified that he did other work under the direction of the architect which was not provided for in the contract. As to these other items, the plaintiff testified that they were done by him under the direction of the architect, who insisted upon it that they were required by the contract; that the plaintiff did not agree with him at any time that any of these items were properly included in his contract; that he did the work comprised in those items for the purpose of completing his

job, and getting the balance that was coming on the contract. By the contract the plaintiff agreed that he would not "ask, demand, sue for or recover for the entire work any extra compensation beyond the amount payable for the whole of the work in this contract stipulated, which shall be actually performed at the price therefor herein agreed upon and fixed," and that the contract and the specifications and the plans "may be modified and changed from time to time as may be agreed in writing between the parties hereto, in a manner not materially affecting the substance thereof, or materially increasing the prices to be paid, in order to carry out and complete more fully the work herein agreed to be done and performed, but such modifications and changes shall be agreed upon as aforesaid before any work shall be done thereunder." None of the provisions of this clause of the contract was carried out. No contract was made for extra work, nor was any modification for additional work agreed to in writing. The architect who was selected as the one to determine what was a due performance of the contract insisted that this work was to be done under the original contract, as a compliance therewith. The plaintiff demands in the complaint the damages sustained because by wrongful acts of the agents of the defendant he was prevented from completing his work. He proves no illegal or wrongful act, but simply a disagreement between himself and the architect, the arbiter agreed upon between the parties, as to what work was within the contract, and that proof is not sufficient to justify a recovery upon the cause of action alleged in the complaint.

The case of Gearty v. Mayor, etc., 171 N. Y. 61, 63 N. E. 804, is not, I think, controlling. The contract there was essentially different from that in this case. The work there to be done was to pave a traverse road crossing Central Park at Ninety-Seventh street and Fifth avenue to Central Park. The contract was to be entirely under the direction of the commissioners of the department of public parks, and the filing of the certificate of the engineer appointed by the commissioners was to be a condition precedent to the right of the plaintiff to payment under the contract, with a further provision that, should any work be found defective or improperly done, such work was to be taken up, relaid, or otherwise remedied to the satisfaction of the engineer; and, if the contractor refused to correct such defective work when notified to do so, the commissioners of public parks were to employ the necessary men and material to do the work, with a further provision that the final certificate of the engineer should be conclusive as to the performance of the contract. The provisions of the contract and the nature of the work to be done in that case were essentially different from those of the contract now under consideration. There was in that contract no provision for the appointment of an architect whose certificate was made by the contract a controlling element as to whether or not the contractor had completed the work according to the plans and specifications. In the Gearty Case the work to be performed was the ordinary work of paving a street with granite blocks. The plaintiff proceeded without interruption with his work for 60 days, and laid a considerable amount of expensive block pavement, receiving therefor the 70 per cent. certificate

of the commissioners and their engineers of construction, stating that there was justly due him a sum of money named for the work done, but within a few days thereafter the plaintiff was ordered by the engineer of construction to take up this work and relay it. The court held that under that contract the plaintiff could have stopped work as ordered to do by the engineer of construction, and stood upon his contention that the work had been properly done, and brought his action to recover the amount due under the contract, and that he also had what the court held was a second remedy, namely, to comply with these improper orders of the commissioners, and then sue the city for the damages sustained by reason of the improper and arbitrary orders received from the commissioners and the engineers of construction which the contractor was compelled to comply with to avoid being a defaulter under a contract with the city, taking what he could get under his final certificate given to him by the engineer, and suing the city for the damages sustained by him by compliance with these unjust orders. This, as I understand it, is the view of the learned judge who wrote the opinion of the majority of the court of appeals in deciding that case. But I do not think that the facts in this case bring it within the scope of that decision. In this case the contract between the parties appointed the architect. Before the contract was made he had prepared plans and specifications upon which the contract was to be based, and whether or not the work done under the contract was a compliance with the plans and specifications was a question that the parties stipulated should be determined by the architect thus appointed. The original plans do not show a lining of asphalt between the brickwork, which was indicated upon the supplemental plans, and it is upon this that the plaintiff's contention seems to be founded that he was not required to asphalt this boiler flue. But there is an express clause in the contract that all the walls, where in contact with the excavation, are to be asphalted with pure asphalt from a point "one foot below boiler-room floor to ground level, and to be rendered thoroughly water-tight"; and it was also provided that "such details on a large scale or full size as may be necessary to more fully explain the general drawings will be furnished to the contractor at the proper time during the progress of the work." It was also provided that "the various drawings and this specification are intended to cover a complete and first class job in every respect. Anything omitted in this specification and shown on the drawings, or vice versa, is to be done by the contractor without extra charge or expense." The contract thus required this boiler flue to be asphalted, and whether the work that was done complied with these plans and specifications was to be determined by the architect. He determined that the work done by the plaintiff was not in accordance with the plans and specifications, and provided the plaintiff with a detail drawing in what respect the work was required to be done so as to comply with the contract, and the plaintiff did that work as required by the architect. It was this work as thus completed by the plaintiff, in compliance with the direction of the architect, that the commissioners accepted and for which they have paid. Upon what principle the plaintiff, having accepted that payment, can insist that the agents of the city have unjustly and arbitrarily interfered with him

in the performance of his contract, so as to make the city liable, I am unable to discover.

No case is cited by counsel to sustain such a contention, except the cause of Gearty v. Mayor, etc., supra, and that, as I have shown, was upon an entirely different contract, and for the performance of different work, that did not involve the determination of an expert as to whether or not the plans and specifications had been complied with, as in the case of a building such as the one in question. We are not dealing with a case where the city refused to accept the work as complete because the architect had not given a certificate, where it was alleged and proved that the work was finished in accordance with the contract, and that the refusal of the architect to give a certificate was unreasonable, as in the case of MacKnight Flintic Stone Co. v. City of New York, 160 N. Y. 80, 54 N. E. 661, but where the architect had apparently given a certificate for the work done as he had required, where amount due under such certificate had been paid, and where there is no allegation that such certificate was a false certificate, and it is not sought to impeach it. It has been settled in many cases in this state that, where the parties to a building contract appoint an architect whose decision as to the completion of the work under the contract is to be final, they are concluded by the award of the architect, unless it is impeached for fraud, bad faith, or manifest error. Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, 15 Am. St. Rep. 376; Dwyer v. Board, 27 App. Div. 87, 50 N. Y. Supp. 123, affirmed on the opinion below 165 N. Y. 613, 59 N. E. 1122; Lawrence v. Mayor, etc., 29 App. Div. 298, 51 N. Y. Supp. 416, affirmed 162 N. Y. 617, 57 N. E. 1115.

This latter case seems to be in point. The contract in that case provided that the engineer should in all cases determine the amount or the quantity of the several kinds of work to be paid for under the contract, should determine all the questions in relation to the work and the construction thereof, and in all cases decide every question that might arise relative to the execution of the contract on the part of the contractor, and his decision should be final and conclusive. The engineer under this clause determined that only 64 cubic yards of cut-stone masonry were to be paid for by the city, and it was held that that award was conclusive under the terms of the contract. Here the architect determined under the contract what the plaintiff was required to do to complete the work contracted for. He furnished plans and specifications for the work, and when the question as to this boiler flue arose he furnished some detail drawings, as the contract provided that he should furnish, and finally the plaintiff accepted those drawings and did the work required under the contract. There is no allegation of bad faith on the part of the architect or the park commissioners, or that the determination was not an honest decision as to the construction of the contract and the work required under it; and it seems to me that there is no basis for a claim that the city or its agents, by an unreasonable or an improper action, prevented the plaintiff from completing his contract, and thus rendered the city liable for damages. The other items of damages which the plaintiff claims to recover under this second cause of action were all for work required

by the architect to be done to complete the contract, and what was said in relation to this boiler flue applies to all of the alleged improper acts of the agents of the city. At most, there is shown a difference of opinion between the contractor and the architect as to the work he was required to perform, and the decision of the architect, the chosen arbiter of the question, in the absence of fraud or bad faith, was binding and conclusive upon the parties, and there is no basis upon which the city can be liable for the act of the architect in determining the question which the contract provided he should determine.

I think, therefore, that the action of the court below in dismissing the complaint at the end of the plaintiff's case was correct, and that the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., concurs.