PEOPLE ex rel. McCABE v. SNEDEKER et al., Town Auditors.

(Supreme Court, Appellate Division, Second Department. June 16, 1905.)

1. CERTIORARI—LIMITATIONS.

Mandamus to compel the audit of a claim by town board was granted, but on appeal the order was reversed, and within a year thereafter the relator brought certiorari to review the same action of the board sought to be corrected in the mandamus proceeding. Code Civ. Proc. § 2125. declares that a writ of certiorari to review a determination must be granted

and served within four months after the determination to be reviewed becomes final and binding. Section 405 declares that if an action is commenced within the time limited, and judgment therein is reversed on appeal, or if the action is terminated in any other manner than by voluntary discontinuance, etc., the plaintiff may commence a new action within one year after such reversal or determination. Section 414 declares that the word "action," as contained in that chapter of which section 405 is a part, is to be construed as including a special proceeding or any proceeding therein. *Held*, that the certiorari proceeding was within the provisions of section 405, so that relator was entitled to maintain it.

2. MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—CONTRACT—EXTRAS.

A town was authorized by a county board of supervisors to expend a certain sum in improving highways, and entered into a contract for the improvement, which provided that the contract price should cover all labor, material, and expenses of every kind necessary to the completion of the contract, and that the contractor would make no claims on account of any variation between the quantities of the estimate and the quantities of the work as done. It was further provided that no claim for extra work should exist in favor of the contractors unless the same had been ordered by the town board, and that, if it should appear that anything was omitted from the specifications requisite for the proper completion of the work, the contractor should do such work without any extra charge. *Held*, that the contractor could not recover for extra work done under direction of the engineer and necessitated by a change of the plans by that officer, but not ordered by the town board, and increasing the cost till it exceeded the sum which the board was authorized to expend.

Certiorari by the people, on relation of William F. McCabe, against John A. Snedeker and others, to review a determination of respondents as the board of town auditors of the town of White Plains. Determination affirmed.

Argued before BARTLETT, WOODWARD, RICH, and MILLER, JJ.

L. Laflin Kellogg (Alfred C. Pette, on the brief), for relator
H. T. Dykman, for respondents.

MILLER, J. This is a certiorari to review the audit and rejection of a claim presented by the relator to the defendants, which occurred January 22, 1902, and which the relator undertook to review by mandamus, with the result that an alternative writ was issued within four months thereafter, and, a trial being had upon the issues joined, a verdict was rendered in favor of the relator for the sum of $19,984.25, upon which a peremptory writ was issued commanding the defendants to audit the claim at not less than said sum. Upon appeal, however, from the order directing the issuance of said writ, it was reversed by this court (92 App. Div. 16, 87 N. Y. Supp. 196) on the ground that the relator had mistaken his remedy, and the order of reversal was affirmed by the Court of Appeals (179 N. Y. 242, 72 N. E. 103). Within two months after such affirmance and within a year after the reversal by this court, the writ herein was issued.

The first question to be considered is presented by the objection of the defendants that the writ was not issued within four calendar months after the determination to be reviewed became final and binding on the relator, as required by section 2125 of the Code of Civil Procedure. The relator relies upon section 405 of the Code

of Civil Procedure, and urges that the word "action" as therein used includes a special proceeding as provided by the last paragraph of section 414; while the defendants insist that by section 414 the application of the different sections of chapter 4 is limited to the cases specified in said chapter, and that in any event mandamus and certiorari are distinct proceedings that could have been prosecuted concurrently. . It is settled that the limitation prescribed by section 414 applies only to the sections of said chapter prescribing limitations of time for the commencement of actions or special proceedings, and that section 405 is general and applies to every limitation, whether prescribed by chapter 4 or by some special provision. Hayden v. Pierce, 144 N. Y. 512, 39 N. E. 638; Titus v. Poole, 145 N. Y. 414, 40 N. E. 228. It is true the office of mandamus is distinct from that of certiorari; one is to compel action, the other is to review action taken. The relator evidently undertook to review the act of the defendants on the theory that it did not amount to an audit, and one member of this court and one of the Court of Appeals agreed with him that it did not. The result which he sought to accomplish by mandamus was the same as he now seeks by certiorari; the subject-matter is the same, to wit, the act of the defendants sought to be reviewed. By pursuing a mistaken remedy he was unable to have the matter determined on the merits, and section 405 seems to have been designed for just such a case. We should therefore consider the case on the merits.

The town of White Plains was authorized by the board of supervisors of Westchester county to borrow the sum of $80,000, by means of a bond issue, to be expended in macadamizing certain highways, the work to be done under the supervision of an engineer, and pursuant to a contract to be entered into on behalf of the town by the commissioner of highways and the town board. Pursuant thereto, the town advertised in the usual way for sealed proposals, specifications and estimates being attached to the notice, which contained, among other provisions, the following:

"The above-mentioned estimate of quantities, though stated with as much accuracy as possible in advance, is approximate only, and bidders are required to form their own judgment of the quantities and character of the work by personal examination of the ground and of the specifications and drawings relating to the work. * * * There shall be no allowance for extras in any account, extra work or materials, except by special agreement made before said extra work is done."

The relator's firm being the lowest bidder, a contract was made between it and the town, which recited the estimates and specifications, and contained many other recitals and agreements indicating an effort to restrict all liability of the town to the amount contracted to be paid, among which were the following:

"And Whereas, The said parties of the first part hereto, the contractors, did declare in writing, over their signatures, that the prices hereinbefore above mentioned, were intended to cover all labor, material and expenses of every kind necessary to the completion of the contract, including all claims that may arise through damage or any other cause whatever, and did further declare that they would make no claims on account of any variation between the quantities of the approximate estimate and the quantities of the work

as done, nor on account of any misconception or misunderstanding of the nature and character of the work to be done, or the character or place where it is to be done.   *   *   *

"And it is further agreed and distinctly understood by and between the parties hereto that no claim for extra work of any kind shall exist in favor of the parties of the first part unless the same has been ordered by the Town Board at a meeting duly called for the purpose, or a regular meeting of such Town Board, and that no such claim shall then exist until a certified copy of the resolution duly passed authorizing such extra work shall have been served upon either of the parties of the first part.   *   *   *

"And it is further agreed that the work covered by the said specifications and plans not only during its progress, but its final completion, must conform truly to the lines and levels as given by the engineer, and must be built in accordance with the plans and specifications furnished. Any and all defects of any kind or nature, or from any cause whatsoever, shall be remedied and corrected at the contractor's expense.

"And it is further agreed by and between the parties hereto that the parties of the first part shall not be relieved even by the certificate of the engineer in charge from the performing of sound and reliable work, or from completing this work in accordance with the plans and specifications, and if there be anything omitted from the specifications requisite for and necessary to the proper completion of the roads and all other work contemplated by the contract, then and in that case the contractor shall do such work as may be necessary without any extra charge or compensation whatsoever."

The contract was performed, and, pursuant to resolution of the town board, the relator's firm was paid according to the provisions of the contract, upon certificates of the engineer that the work had been completed in accordance with the plans and specifications. Thereafter a verified claim was presented by the contractors to the town board for furnishing 9,367 cubic yards of broken stone at $2.75 per cubic yard, alleged to have been required by reason of changed cross-sections and grades fundamentally different from those called for in the contract, it being alleged that the contractors were prevented by the town from doing the work as called for under the contract and plans. The audit and rejection of this claim is the act sought to be reviewed.

There is nothing in the record to show what the alleged fundamental changes in cross-sections and grades were, or how the town prevented the contractors from doing the work according to contract, except the allegation in the petition that the changes were made by the engineer, who compelled the contractors, against their protest, to do the work according to the changed plans. The resolution rejecting the claim is as follows:

"I move that the claim be rejected on the ground that it is not a legal charge against the town of White Plains, and if any extra work was done it is in violation of the express terms of the contract."

The defendants have made no return as to the facts in respect to said alleged fundamental changes, contenting themselves with returning merely the verified claim and the proceedings thereon, together with the contract, estimates, specifications, certificates of the engineer, and the record of their own and the proceedings of the board of supervisors. It does appear, however, by the return that $77,706.67 of the $80,000 was expended, and that the plans and specifications upon which the contract was let were approved by the town board, and that it never authorized any deviation therefrom.

We will assume that without the authority of the town board the engineer changed the plans so as to require the extra stone claimed to have been furnished, and that the contractors complied with the order of the engineer under protest; still there is no suggestion that any member of the town board even knew of the change, and, on the contrary, the contractors obtained pay for the work upon certificates reciting that it was done in accordance with the plans and specifications. If the claim is based on the contract, concededly its rejection was proper, because the terms of the contract in respect to extra work were not complied with. The relator cannot assert that he was prevented from performing the contract, because he has obtained the full contract price upon certificates reciting that he had performed it. The most favorable view to be taken of his case is that, in obedience to the order of the engineer, he did more than the contract required; and he now seeks to escape its provisions by the ingenious theory that he can recover damages as for a breach of the contract by calling the change necessitating the additional work a fundamental change. I should have supposed either that the claim was for extra work within the contract, or that, if it was independent of and unwarranted by the contract, it would have to rest upon implied contract. The engineer could not have made an express contract, and it cannot be contended that any contract could be implied from his directions; but although he could not create any liability against the town upon either express or implied contract, it is urged that the same thing can be accomplished by treating the claim as one for damages for breach of contract. It is not disputed that the town board itself could not have made a valid contract involving the expenditure of more than the sum of $80,000 authorized by the resolution of the board of supervisors, and yet a liability is attempted to be fastened upon the town for work $20,000 in excess of the amount thus authorized, by reason of the direction of an engineer whose only duty was to supervise the work and see that it conformed to the plans and specifications in accordance with which the contractor had agreed to do it. If such a claim can be established under the guise of damages for breach of contract, then an easy way is provided by which officers whose powers are carefully defined and restricted can evade such salutary provisions and restrictions. Concededly, the contractors assumed all of the risks of inaccuracies of the estimates and of omissions in the plans and specifications, and expressly contracted to do all of the work required to grade and macadamize the highway to the width, depth, and grade specified, and not even the certificate of the engineer could authorize them to depart from the plans and specifications which were made a part of the contract. Obviously there could be no "extra work" without a change of plan, and the fair construction of the contract requires that all work necessitated by such changes, whether termed "incidental" or "fundamental," should be included within the term "extras," which could only be recovered for if authorized by the town board, as provided by the contract. If the changes are to be regarded as so fundamental as practically to have substituted a new contract for

the one made with the town board, then the relator is met with the difficulty that the servant of the town directing the change had no authority to contract or to vary the contract made, and could not impose a liability on the town by directing a departure from the specifications which the relator had expressly agreed should not occur without the consent of the town board. We think the provisions of the contract quoted, when construed with reference to the entire contract, require us to hold that the term "extra work" was intended by the parties to include all work required by change of plan. McMaster v. The State of New York, 108 N. Y. 542, 15 N. E. 417, Gearty v. Mayor, etc., of New York, 171 N. Y. 61, 63 N. E. 804, and Dwyer v. The Mayor of New York, 77 App. Div. 224, 79 N. Y. Supp. 17, relied upon by the relator, are not in point. In the first case the claim was for loss of prospective profits on work which the contractor was not permitted to perform, and it was held that the fact that the contractor had completed the contract so far as he was permitted was not a bar to a recovery of prospective profits as damages for the breach of contract. In the other two cases relied upon, the recovery sought was for being required to do work the second time, already done in accordance with the contract, and, although the actions were treated as actions to recover damages for breach of contract, the authority of the board directing the work to be done was not questioned, and the actions might as easily have been sustained on the theory of implied contract. The reasoning in the case of O'Brien v. Mayor, etc., of New York, 139 N. Y. 543, 35 N. E. 323, is applicable to the facts in this case. In that case it was held that the contractors could not recover as damages the increased cost of the work caused by mistakes of the engineers in furnishing erroneous grades, lines, and centers, although such errors were assumed by the court to have been radical and harmful. Of course, the determination of that case turned largely upon the construction of the special statute pursuant to which the contract was made, which was held to limit the powers of the officers having the matter in charge; but, as we have seen, the powers of the engineer and the town board in the case at bar were equally limited, the one by the express contract under which the work was performed, the other by the statute and the resolution of the board of supervisors authorizing the work.

The determination of the board of town auditors should be confirmed, with $50 costs and disbursements. All concur.