[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 482 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 483 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 484 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 485 
The finding that the work was suspended in March, 1890, by direction of the defendant, is supported by evidence. The letter of March 31, 1890, addressed by Dimmick, secretary of the company, in his official character to the plaintiff, was justly interpreted by the trial judge as containing a request by the defendant to suspend work under the contract. It is true that the letter states that "it is desired by Mr. Edwin Young, the executor of Mr. Cornell," that the work shall be suspended. But the relations between the Cornell estate and the defendant were of such a character that the work could only be prosecuted with the consent and co-operation of the former. Cornell in his lifetime was the promoter of the enterprise of building the road, and the only source from which funds could be obtained for continuing the work. He owned nearly the whole stock, and seems to have been vested with the exclusive management of the affairs of the corporation. The board of directors do not appear to have had any meetings, but all its powers were exercised by Mr. Cornell and the secretary, Dimmick.
In view of the circumstances, when the secretary informed the plaintiff of the wish of the representative of the Cornell estate that the work should be suspended, which was confirmed *Page 488 
at the subsequent interviews between the plaintiff and Dimmick and Young, he had a right to regard the letter as a notification by the company to suspend the work. There were no funds in the treasury. The work could not go on unless the means should be furnished out of Cornell's estate. The executor was not ready to act. Both the plaintiff and Dimmick, the secretary, understood the situation, and when the plaintiff was informed by the secretary of the company that the executor desired that the work should be suspended, he had a right to understand that this was also the wish of the company. The actual authority conferred by the corporation upon Dimmick does not appear. But his authority may be implied from the power he had been accustomed to exercise without dissent of the company, and presumably with its acquiescence. He was a director of the company and its secretary and treasurer. He was the person through whom the directions of the company to the plaintiff were communicated, and the plaintiff was justified in regarding directions given by him in his official character respecting the prosecution or suspension of the work under the contract as authorized by the company. That the company was an actor in suspending the work and that the letter of March 31, 1890, was intended as a direction by the company to the plaintiff to suspend the work, is also a reasonable inference from other facts. The company treated the work as suspended. It made no request upon the plaintiff to proceed. On the contrary, he was unable to get the consent of the company to resume the work, although he made repeated applications for this purpose to the secretary at the company's office, and upon application to the vice-president that officer disclaimed any knowledge of the affairs of the company. The chief engineer of the defendant in charge of the work testified that on March 31, 1890, he received orders to stop the work from Mr. Dimmick, the secretary, and that he was the official through whom he was accustomed to receive the orders of the company, and thereupon he discontinued engineering work which was necessary to be done before the plaintiff could proceed. *Page 489 
The right reserved to the company in the 8th article of the contract, to suspend or delay the work, is to be reasonably construed. It could not abandon the enterprise or delay it for an indefinite and unreasonable time, and still refuse to pay the plaintiff the ten per cent withheld, on the ground that by the contract that amount was to be retained until the completion and acceptance of the work. When the action was commenced the ability of the company to further prosecute the work was upon the evidence contingent upon the action of third parties. The company refused to give the plaintiff any assurance that the work would ever be resumed. The last suspension had already continued six months. Under these circumstances we think the 8th article was not available to the defendant as a defense when called upon for payment of the sum retained, which represented an indebtedness for work done and materials furnished under the contract.
The trial judge awarded to the plaintiff in addition to the tenper cent withheld under the contract, the sum of $2,000 for the value of the use of teams and property which the plaintiff kept unemployed upon the line of the road from March 31, 1890, to July 22, 1890, and for the wages of men for a period of about ten days from April 1, 1890. There was evidence tending to show that Dimmick, the secretary, on suspending the work March 31, 1890, and Young, the executor of Cornell, requested the plaintiff to keep the men and teams upon the line of the road in readiness for the resumption of the work, and that at their request the men were discharged on the 11th of April, and the teams on the 22nd of July. Under the circumstances an implied contract arose on the part of the defendant to compensate the plaintiff for his loss in foregoing the use of his teams and property during this period and for his expenses in retaining the men, provided the arrangement was one which Dimmick was authorized to make in behalf of the company. We think the arrangement was within the incidental powers possessed by Dimmick as the representative of the company in directing a suspension of the work. When the suspension was directed it seems to have been supposed by *Page 490 
all the parties that it would continue for a short time only, and it may well have been regarded that any delay in resuming the work when its resumption was decided upon, would be to the detriment of the company.
We are unable, however, to concur with the courts below in the award of the sum of $3,000 liquidated damages under the provisions of the 12th article. By that article the right was reserved to the company to terminate and end the contract at any time by formal notice in writing of its election so to do, and upon payment to the contractor for all labor performed and of the further sum of $3,000 as liquidated damages, "which payment," the contract declares, "shall be in full for all labor performed and materials furnished, and damages that the party of the second part may sustain by the non-performance and completion of the work provided for in and by the above agreement." The provision as to liquidated damages applies only in case the contract should be terminated by the election of the company before the work was completed, which election was to be signified by written notice to the plaintiff, and notice alone would be ineffectual to dissolve the contract, unless the payments, including the sum paid for liquidated damages, should be made. The liquidated damages were not fixed for a breach of the contract. The dissolution of the contract, under the terms of the 14th article, would in no sense constitute a breach, but would be a power reserved in the contract itself. The company never exercised the power conferred by the article. It never terminated the contract. The contract was binding upon the company at all times up to the commencement of this action. By its refusal to permit the plaintiff to proceed with the work, and its unreasonable delay, it had subjected itself to liability to pay the plaintiff in full for the work done and materials furnished by him under the contract, and could no longer insist on retaining the ten percentum under the provisions of the contract. By its own acts, the company had forfeited the right longer to withhold payment. Any damages which the plaintiff sustained by the unreasonable delay of the company and *Page 491 
its practical abandonment of the enterprise, the plaintiff was entitled to recover as upon a breach of the contract by the defendant. But the provision for liquidated damages had no application to this situation, and it cannot be extended beyond its obvious scope and purpose.
For the reasons indicated, we think the judgment, so far as it embraces the allowance for liquidated damages, is erroneous.
The judgment should, therefore, be modified by striking out the sum awarded as liquidated damages and, as so modified, affirmed, without costs in this court to either party.
All concur.
Judgment accordingly.