EUGENE LENTILHON, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

*Municipal contract — improper directions of a city representative as to the manner of doing the work — right of election possessed by the contractor to refuse to proceed or to continue the work and recover on a* quantum meruit *— damages for the city's improperly rejecting materials, for its delay, for its failure to perform conditions precedent and for its interference with the work — representations in the specifications for the work — how far the contractor may rely thereon — pumping water from an excavation — two causes of delay, for only one of which the city is liable.*

Where a representative of a municipality, authorized to give directions respecting the performance of a contract between the municipality and an individual, gives the contractor, and insists upon his compliance therewith, erroneous directions respecting the execution of the contract, which directions necessitate the performance of more work than the contract properly interpreted requires, the contractor has an election whether to refuse to proceed with the work and to recover upon a *quantum meruit* for the work already done, or to continue the work under protest and recover the value of the extra work upon a *quantum meruit.*

While the contractor may not ordinarily recover damages for the acts of an inspector of a municipality, in improperly rejecting materials and thus delaying the work, he may recover damages for unreasonable delay, on the part of the municipality, in permitting him to proceed, or for its failure to perform conditions precedent to his duty to proceed, or for unreasonable interference by the municipality with the contract work or with other contractors over whom the municipality has reserved control.

It is only where there is an express representation in a plan or specifications, inserted for the purpose of showing bidders that something exists which will facilitate and render less expensive the performance of the work, that the contractor may recover damages sustained by him in consequence of the fact that the representation is found to be erroneous.

As a general rule, a contractor, who submits a gross bid for the entire performance of a given work for a municipality, must assume the risk as to the nature and quantity of the work to be performed, even though approximate estimates of the quantities of such work, prepared by the municipal authorities for the guidance of bidders, prove to be materially incorrect.

When a person who enters into a contract with the city of New York, to remove for a gross sum the walls of a reservoir, is not entitled to recover extra compensation in consequence of the fact that the plan of the reservoir referred to in the specifications incorrectly represented the angle of the slope of the reservoir walls, and thus necessitated the performance by the contractor of considerable more work than would have been necessary if the plan had correctly indicated the slope of the reservoir walls, considered.

How far plans for a public work involving the removal of an entire structure are to be treated as designed to indicate the location of walls to be removed and the levels and extent of excavation and of filling, but not to be used by contractors proposing to bid for the doing of such work as a basis for figuring the quantities of material to be removed, considered.

When the contractor is not entitled to recover extra compensation for the expense incurred by him in pumping water from an excavation which he made in the performance of the contract, considered.

Where the contractor was delayed in the performance of his work by two causes, for only one of which the city was responsible, it is incumbent upon the contractor, if he wishes to recover damages from the city for such delay, to make specific proof as to the extent of the delay resulting from the cause for which the city was liable.

MOTION by the plaintiff, Eugene Lentilhon, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, upon the dismissal of the complaint at the close of the plaintiff's case after a trial at the New York Trial Term in May, 1904.

The complaint contains three counts for damages for breach of contract made between the plaintiff, a contractor, and the president of the department of parks, on the 2d day of June, 1899, for the removal of the Forty-second street reservoir walls and the excavation of the foundation for the new library building. The advertisement for sealed proposals for the work was preceded by a notice that " contractors are particularly requested to examine the Plans,

Specifications and Location of the work before bidding." It was stated in the advertisement that sealed estimates would be received until eleven A. M. on the 27th day of April, 1899, when the bids would be opened and the contract awarded as soon thereafter as practicable. The proposals for the excavation of the foundation, aside from the removal of the old reservoir, were required to state the amount per cubic yard for which the work would be done, but with respect to the removal of the reservoir, which alone is involved in the appeal, the bidders were required to state a gross price for which " the whole of the work" set forth in the plans, specification and estimate and form of agreement annexed to the advertisement for estimates would be done. Bidders were expressly required to submit their proposals on certain conditions, among which were the following:

" (1). Bidders must satisfy themselves by personal examination of the site of the proposed work, and its present condition and nature, by careful examination, and by such other means as they may prefer, as to the sufficiency of foregoing Architect plans, and shall not at any time after the submission of their bid, dispute or complain of such plans, or the specifications and directions explaining or interpreting them, nor assert that there was any misunderstanding in regard to the location, extent, nature or amount of the work to be done.

" (2). Bidders will be required to complete the entire work to the satisfaction of the Commissioners of the Department of Parks, and the Architects appointed by them, and in accordance with the drawings, details and directions given or which may be given by the Architect, and in conformity with the specifications hereunto annexed. No extra compensation beyond the amount payable for the whole work contemplated, and which shall be actually performed at the gross price to be specified by the lowest bidder, shall be due or payable.

" (3). The foundation walls of the Library Building may be built before the removal of the Reservoir is entirely completed, and the Commissioners of the Department of Parks reserve the right to make contract for such foundation work with the Contractor or any other party and to have the work executed during the progress of the Reservoir removal work. The Contractor for the removal of

the Reservoir will have no right to make any claim for damage owing to the progress of such foundation work. * * *

" Bidders are specially notified that the Commissioners of the Department of Parks reserve the right to determine the times and places for commencing and prosecuting the work, and that postpone- ment or delay on the whole or any part thereof cannot constitute a claim for damages, nor for a reduction of the damages fixed for delay in completing the work beyond the time allowed. * * * "

The form of the contract thereto annexed which was subse- quently signed by the parties provided, among other things, that the plaintiff should provide and furnish " all the necessary materials and labor required for the removal of the Forty-second Street Reser- voir, and other work " which should " strictly conform " to the plans and specifications afterwards mentioned and to be performed under the inspection of the person or persons appointed by the commis- sioner of parks. The specifications provided, among other things, as follows :

" The work included in this section will be the entire removal and disposal of the masonry and rubbish of the reservoir, excepting only certain portions hereafter described, and the building of the fence around the entire reservoir site. Remove the entire reservoir struc- ture except such portions as are hereafter described, including all of the masonry, foundations, earth filling, puddling, paving or other material, down to the natural soil, according to the profiles shown on drawing No. 11. All of this material to be entirely removed from the site and disposed of by this Contractor at his own cost. * * *

" All quantities of work and materials to be paid for shall be measured and determined by the Surveyor of the Department under the direction of the architects according to the plans and the work- ing lines that may be given, and the specifications, when the work comes up to such lines. No allowance will be made for any excess above the quantities required by such plans, lines and specifications on any part of the work. * * * Any doubt as to the meaning of said specifications, or any obscurity as to the wording of them, will be explained by the architects, and all directions and explana- tions requisite, proper or necessary to complete or make more defi- nite any of the provisions of said specifications, and give them due effect, will be given by the architects, and their decision shall be

considered final in any dispute that may arise concerning the meaning of any clause of the specifications or the detail of any plan. * * *

"And it is further agreed that should postponement or delay be occasioned by the precedence of other contracts on the site of the work, either by said Department of Parks or other City authorities, no claim for damages therefor shall be made or allowed. No work will be paid for which is done before the day the Contractor is ordered to proceed. * * *

" All loss or damage arising out of the nature of the work to be done under this agreement, or from any unforeseen or unusual obstruction or difficulties which may be encountered in the prosecution of the same or from the action of the elements, is to be sustained by the Contractor aforesaid. * * *

" No extra work when involving an additional cost shall be executed, unless an estimate for the same has been submitted to the Department and the expenditure authorized by it in writing. * * *

" To prevent all disputes and litigation it is further agreed by and between the parties to this contract that the architects appointed by the Commissioners of Parks, in charge of the work, shall in all cases determine the amount or the quantity of the work which is to be paid for under this contract, and they shall determine all questions in relation to said work, and they shall in all cases decide every question which may arise relative to the execution of this contract on the part of the said Contractor, and their estimate and decision shall be final and conclusive upon said Contractor, and such estimate and decision, in case any question shall arise, shall be a condition precedent to the right of the party of the second part to receive any money under this agreement. * * *

" And the said party of the second part further agrees that if, before the completion of the work contemplated herein, it shall become necessary to do any other or further work than is provided for in this contract, the said party of the second part will not in any way interfere with or molest such other person or persons as the Commissioners of Parks may employ to do such work, and will suspend such part of the work herein specified or will carry on the same in such a manner as may be ordered by the said Commis-

sioners, to afford all reasonable facilities for doing such work, and
no other damage or claim by the said party of the second part there-
for shall be allowed, except such extension of the time specified in
this contract for the performance thereof as the Commissioners may
deem reasonable, and shall so certify in writing.

" And the said party of the second party hereby further agrees to
receive the following sums as full compensation for furnishing all
the materials and labor for completing in all respects the aforesaid
work and appurtenances in the manner herein specified, viz. :

" Item II.— For furnishing all materials and labor for the com-
plete performance of all the work described in Section II of this
specification the sum of one hundred and three thousand five hun-
dred dollars ($103,500)."

The work of removing the reservoir walls was embraced in sec-
tion 2 above referred to. The advertisement for proposals, the
proposals and specifications were made part of the contract which
was executed on the 2d day of June, 1899. A drawing desig-
nated as No. 11 was referred to in the specifications and was on file.
Although it is not plain to the non-expert, it seems to have been
assumed that this plan indicates the dimensions of the old reservoir
walls, the angle of the slope and the extent of the excavations and
filling. It does not otherwise, however, show the quantity of mate-
rial to be removed in removing the walls and foundations of the
reservoir or the quantity of this material that might be utilized upon
the ground for the filling required by the contract. These quanti-
ties could only be determined by a careful mathematical calculation
from the plan on the assumption that it was correct and drawn to scale.
The plan was not made from a survey. It was taken from an old
city atlas. It proved inaccurate with reference to the angle of the
slope, indicating it as one to one, when, in fact, it was one to one
and fifty-one one-hundredths, and in consequence there were 20,624
cubic yards, or about one-sixth more to be removed than there would
have been had the angle of the slope, as shown by the plan, been
correct.

There is also a claim for removing other material not shown by
the plan and for removing or carting an excess of material; and these
items together with the excess in the walls above given aggregate
about 34,000 cubic yards. The plaintiff gave evidence tending to

show that the reasonable value of removing this additional quantity of material was $39,357.48. The plaintiff is a competent and experienced engineer and a contractor as well. He testified that in making his bid he relied upon the blue print copy of the plan furnished by the architect, but he admitted that he went upon the premises several times and made such personal observations as he could, claiming, however, that the difference in the slope was not discernible to the eye, and that prior to making his bid his attention was drawn to a letter from the architects to the secretary of the board of park commissioners, published in the *City Record*, reciting, among other things, as follows: "In reply to a message received from you to-day concerning the preliminary estimates for the work of removing the reservoir, we refer you to our letter of February 16, in which we explain the difficulty of making an accurate estimate for work of this character, for which there is no precedence.* We would state, however, that, figuring as near as we can from the existing plans of the reservoir, we find that there will be 38,156 cubic yards of stone work, 10,592 cubic yards of concrete and rubbish, 56,909 cubic yards of earth to be removed." The work was commenced in June, 1899, and the error in the plan was not discovered until the month of September thereafter. Discovery resulted from an inquiry into the cause of the contractor n̊t receiving as large an amount for the first partial payment as he expected in view of the quantities of material removed. He entered a protest and insisted upon being paid upon the basis of the quantities as figured from the plan, and proceeded with the work, which was finished in December, 1903.

A drain is shown on the plan running from the bottom of the reservoir to the sewer in Forty-second street, but as the contractor was required to remove materials and excavate some five feet below the level of the outlet, it would not drain the surface water that accumulated below that level from rains and snow. The sewer in Forty-second street was sufficiently low to drain all or most of the water, but it would have required a cut to connect therewith, which was not made. The contractor insisted that it was the duty of the city to drain this water, and the architects took under consideration his protest in this regard and a proposition on his part for doing the

---

\* *Sic.*

necessary pumping, without, however, making any decision thereon; and he proceeded with the work and did the pumping at an expense of $2,322.59, for which he also seeks to recover.

The plaintiff also showed that his work was delayed by the failure of the architects to promptly furnish working plans for the performance of his work to enable him to proceed therewith, and by the failure of other contractors to do work necessary to enable him to proceed, with the result that when he came to perform his work the subway work in Forty-second street was under way, and that or changing the surface railway motive power to electric power underground necessitated the closing of the exit to Forty-second street, through which it would have been convenient for him to have hauled the surplus material, and also causing delay owing to congestion at the dumping ground at the foot of East Fortieth street, in consequence of which the carts were only able to haul eight loads, whereas, but for this interference with the exit and delay at the dump, they would have been able to haul ten. The plaintiff estimated the extra cost of the work in this regard at $8,337.41.

*L. Laflin Kellogg,* for the plaintiff.

*Terence Farley,* for the defendant.

Laughlin, J.:

The plaintiff has been paid in full according to the contract. The object of this action is the recovery of damages for alleged breaches of the contract. The learned counsel for the city contends at the outset that the plaintiff has mistaken his remedy, and that the city is not liable inasmuch as the work was performed under a special act of the Legislature by which the city acted, so far as it acted at all, as the agent of the State. The special act is chapter 556 of the Laws of 1897.

Section 1 of the act recites that the reservoir site has been added to Bryant park, and it authorizes the department of public parks to remove the reservoir and to erect a library building upon the site, "in accordance with plans to be made and prepared by the trustees of the New York Public Library, Astor, Lenox and Tilden foundations, and to be approved by the board of estimate and apportion-

**556** LENTILHON *v.* CITY OF NEW YORK.

ment." The section further recites that these libraries had been consolidated, and that the building was to be used as a public library and reading room by the consolidated corporation. Section 2 of the act provided that the contract, specifications and bonds for the faithful performance of the work and the furnishing of materials therefor should be prepared by the department of public parks, submitted to the board of estimate and apportionment for its approval, and approved "as to form" by the corporation counsel. Section 3 of the act authorized the board of estimate and apportionment to contract with the consolidated corporation for the use and occupation of the library building. Section 4 of the act, as amended by chapter 627 of the Laws of 1900, provides for defraying the expense of removing the reservoir and constructing the new library building by the issue and sale of consolidated stock of the city by the comptroller upon the authorization of the board of estimate and apportionment, the disbursements from the proceeds to be made upon vouchers certified by the department of public parks, and gives the board of estimate and apportionment discretion to fix the amount of stock to be issued.

In the view we take of the case it is unnecessary to decide whether this is, strictly speaking, a city contract upon which the city may be held liable in damages for a mistake on the part of any of the individuals, officers or agents connected with preparing the plan or specifications or the supervision of the work; but the fact that the work was required to be done according to a plan prepared by the trustees of the consolidated libraries is significant, and has a material bearing upon the points upon which it is sought to predicate liability of the city. It may be that the plaintiff was misled by this plan and that he has sustained damages in consequence thereof. It must be borne in mind, however, that the law requiring the letting of contracts for public improvements to the lowest responsible bidder may be readily evaded if contractors are to be permitted, without seeking a rescission of them, to obtain the fruits of the contracts by performance, and then secure extra compensation upon some theory of mistake such as is presented concerning the plan in the case at bar. The contractor in the circumstances was scarcely justified in relying upon the plan for quantities. There was no representation that it was made from an actual survey and in fact

the letter published in the *City Record* which he had read rather indicated the contrary. Other parts of the work where the quantities were known or ascertainable were let by the cubic yard, while a gross bid was required for the entire work completed, and although the reasons therefor do not expressly appear they are readily to be inferred and were doubtless understood by the plaintiff. Some of the stone of the reservoir walls, suitable for use in the construction of the library building, was required to be prepared and stored. The contractor was required to do a large amount of filling, and it was contemplated that considerable of the other material would be thus utilized. There was, therefore, some difficulty in letting the contract upon any other basis. We are of opinion that there was no warranty or guaranty in law as to the correctness of the plan as a basis for ascertaining the quantity of material to be removed by the contractor. The plan was designed to indicate the location of the walls that were to be removed and the levels and extent of excavation and the levels to which hollows were to be filled; but we think it was not intended as a basis upon which bidders were to figure the quantities of material to be removed, and that the express provisions of the contract and specifications requiring the removal of the entire reservoir structure were controlling. (*Dean* v. *Mayor*, 167 N. Y. 13.) Damages as for a breach of contract may be recovered for an erroneous direction of a representative of a municipality, authorized to give directions in the premises in superintending the execution of contract work, which are insisted upon and necessitate the performance of more work than the contract, properly interpreted, requires, and the contractor has an election either to refuse to proceed and recover upon a *quantum meruit* for the work already done or to continue under protest and recover the value of the extra work upon a *quantum meruit* as the measure of damages for the breach of contract. (*Mulholland* v. *Mayor*, 113 N. Y. 631; *Becker* v. *City of New York*, 170 id. 219; *Gearty* v. *Mayor*, 171 id. 61; *Dwyer* v. *Mayor*, 77 App. Div. 227.) While damages may not ordinarily be recovered for the acts of an inspector in improperly rejecting materials and thus delaying the work (*Montgomery* v. *Mayor*, 151 N. Y. 249), they may be recovered for unreasonable delay on the part of the party for whom the contract work is being done in permitting the contractor to pro-

ceed, or in performing conditions precedent to his duty to proceed, or for unreasonable interference with the contract work or with other contractors over whom control has been reserved. (*McMaster* v. *State of New York*, 108 N. Y. 542; *Curnan* v. *D. & O. R. R. Co.*, 138 id. 480; *Del Genovese* v. *Third Ave. R. R. Co.*, 13 App. Div. 412; *Thilemann* v. *City of New York*, 82 id. 136; *Rogers* v. *City of New York*, 71 id. 618; affd., 173 N. Y. 623.) In those cases and only those, I think, where there is an express representation in a plan or specifications inserted for the purpose of showing bidders that something exists which will facilitate and render less expensive the performance of the work, a recovery may be had for the damages caused if it shall turn out that the representation is erroneous. (*Langley* v. *Rouss*, 85 App. Div. 27; *Horgan* v. *Mayor*, 160 N. Y. 516; *Becker* v. *City of New York*, 176 id. 441.) In view of the provisions of the advertisement and of the contract and the nature of the work, the proper interpretation of the specifications, which contained no estimate of quantities, is that the contractor was called upon to examine the work and make such investigation as necessary to ascertain the quantities. The case falls within the general rule upon that subject which requires a contractor who interposes a gross bid for the entire performance of a given work to assume the risk as to the nature and quantity of the work to be performed, even though approximate estimates of the quantities which are materially wrong have been prepared by the public authorities for the guidance of bidders. (*Sullivan* v. *President, etc., of Village of Sing Sing*, 122 N. Y. 389.)

We are also of opinion that there can be no recovery for the expense of pumping. The contractor bases his claim in this regard upon the fact that there is no provision in the specifications requiring him to do any pumping and that there is a provision in the specifications for contract No. 2 requiring the contractor for that work to do the necessary pumping. The pumping was incident to the work. I do not understand that the city was interested in the question of pumping so far as the same was performed by the plaintiff. The evidence indicates that it was for his own convenience in the performance of the work which he undertook. The other contract had not been let, and of course he was not entitled to rely upon

any other contractor doing the work for him. There was no misrepresentation with respect to the sufficiency of the outlet. It is not pretended that the plan in that regard was inaccurate either as to the size or location of the outlet or sewer in Forty-second street into which it emptied. The outlet was open and unobstructed and it drained the water to the level of its bottom. In this respect the case is distinguishable from that of *Horgan* v. *Mayor* (*supra*), where the specifications clearly showed that it was contemplated that a park lake, the bottom of which was to be improved, was to be drained through a submerged outlet, and after the contract was let it was discovered that the outlet was so obstructed that it would not drain the lake above its level. The contractor was, therefore, permitted to recover for the extra expense of pumping down to the level of the outlet.

On the 26th of March, 1901, a contract known as contract No. 2 was let for other work incident to the construction of the new library. Some of the work which the plaintiff was required to do could not be performed until certain work was performed by the contractor with whom contract No. 2 was made. The only evidence of damages caused by delay was the evidence tending to show the extra cost on account of the delay caused by the obstruction of the Forty-second street exit and at the dump; and this evidence was confined to the period from the 23d day of April to the 13th day of September, 1901, all of which was after the letting of the second contract. For delay caused by the work thereunder by the express terms of the specifications the city was relieved from liability. If any of these damages were caused by the delay in furnishing working plans, as distinguished from the delay caused by the second contract, they have not been separated by the evidence. Even if the city would be liable for such damages for delay in furnishing the working plans, which is somewhat doubtful on the question of their being sufficiently proximate, and also in view of the provision of the specifications requiring the contractor to assume responsibility for all unforeseen difficulties encountered (See *Mairs* v. *Mayor*, 52 App. Div. 343 ; affd., 166 N. Y. 618 ; also *Horgan* v. *Mayor*, *supra*), no recovery can be had therefor owing to the failure to make specific proof.

It follows, therefore, that the plaintiff failed to establish a cause

of action upon any of the counts, and his exceptions should be over-ruled, with costs, and judgment directed in favor of the defendant for a dismissal of the complaint, with costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and HATCH, JJ., concurred.

Exceptions overruled, with costs, and judgment ordered dismissing complaint, with costs.