DOWLING, J.   The learned justice was not only clearly within his rights in resettling the order granting a new trial, but it was his duty to state the grounds upon which the new trial was granted in the order directing same.   Rule 31, General Rules of Practice.   Nor is there any question but that in its final form the order correctly states the ground upon which he set aside the verdict, as he intimated to plaintiff's counsel, while the jury were deliberating, he would do, if it were for the plaintiff.

But we think that, in view of the situation in which plaintiff was placed, through no fault of his own, the terms imposed were not adequate.   The case on appeal from the original order had been settled on consent.   It was served on November 21, 1910, and filed December 23, 1910.   Plaintiff had noticed the appeal for argument on January 10, 1911, and an adjournment was had until January 18th; defendant agreeing to serve its brief by January 13th.   The notice of motion to resettle the order was given on January 11th, and the order of resettlement was made January 16th.   When the resettled order was once entered, the plaintiff's appeal from the original order became ineffectual, and it would be unjust to permit him to suffer any loss because of the changed conditions, due to defendant's discovery of the infirmity of the original order as a means of presenting the question of whether or not the verdict was against the weight of evidence; the presumption under rule 31 being, where no ground is stated in the order, that it was made on the exceptions taken during the trial.   It was defendant's duty to see that the order entered on its motion was properly framed, and it unduly delayed in so doing, when its action was not taken until after an appeal had been taken and the papers thereon printed.

In addition to the $10 motion costs allowed plaintiff on the resettlement, the following terms should therefore be imposed: (1) Plaintiff should be allowed to discontinue his appeal from the original order, without costs.   (2) Plaintiff should be allowed to withdraw the papers heretofore filed on said appeal, and defendant should return such papers therein as may have been served on him.   (3) Defendant should pay for the printing of plaintiff's briefs on the appeal from the original order, and of the resettled order upon a new appeal.

As thus modified, the order appealed from should be affirmed, without costs.   All concur.

---

## HOWARD IRON WORKS v. PITTSBURG STEEL CONST. CO.

(Supreme Court, Appellate Division, Fourth Department.   March 8, 1911.)

1. CONTRACTS (§ 199*)—CONSTRUCTION—SUBJECT-MATTER.

Under a contract by which plaintiff was to furnish counterweights to counterbalance the movable span of a bascule bridge which defendant had agreed to build for a city, where the specifications in defendant's contract with the city are made a part of the agreement between plaintiff and defendant, and estimated weight of the counterpoise required is given, but this estimate is in terms furnished only for the assistance of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bidders, and reference is made to another paragraph, which provides that the plans show the loading requirements, general dimensions, and such details as are necessary for an intelligent bid on the work, but the bidder must check the same and make his own estimate of weights and quantities, if the span as built according to the specifications required for its successful operation more than the estimated number of counterweights, plaintiff was bound to furnish them, and if less than the estimated amount was sufficient, he did all his contract required by furnishing that amount.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 884–889; Dec. Dig. § 199.*]

2. CONTRACTS (§ 232*)—CONSTRUCTION—COMPENSATION—COMPENSATION FOR EXTRA WORK.

Under a contract by plaintiff to furnish defendant with counterweights to counterbalance a movable span of a bascule bridge, where plaintiff agreed to allow for counterweights canceled by reason of change of plans of the bridge at the rate of $1.15 per 100, and was to receive $2 per 100 for additional weights required on account of such changes, where one change lessened and another increased the weights required, plaintiff was entitled to his allowance only on the net increase of weight, and not to an allowance of $2 per 100 on the entire increase caused by one change, with a deduction of $1.15 per 100 for the decrease caused by the other change.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071–1097; Dec. Dig. § 232.*]

Appeal from Trial Term, Erie County.

Action by the Howard Iron Works against the Pittsburg Steel Construction Company. From a judgment for plaintiff on a verdict directed by the court at the close of the evidence, and from an order denying a new trial, defendant appeals. Modified and affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Rogers, Locke & Babcock (Chauncey J. Hamlin, of counsel), for appellant.

Edward C. Randall, for respondent.

ROBSON, J. Plaintiff had a contract with defendant by which it agreed, among other things, to furnish counterweights to counterbalance, as it was raised or lowered, the movable (or uplift) span of a bascule bridge, which defendant had agreed to build for the city of Buffalo. The specifications, which were a part of defendant's contract with the city for the building of the bridge, are made a part of plaintiff's agreement with defendant, and all requirements as to the counterweights to be furnished are to be found only in these specifications. The estimated weight of the counterpoise, which the bridge would require, is stated in the specifications to be 636,000; but this estimate is in terms furnished only for the assistance of bidders, and reference is expressly made to a preceding paragraph of the specifications, which provides that:

"These plans show the loading requirements, general dimensions, and such details as necessary for an intelligent bid upon the work; but the bidder hereunder must check the same and make his own estimate of weights and quantities, those shown being furnished only as a check upon such figures, quantities, and dimensions."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It is further provided that the movable span shall be balanced by two counterweights, one for each truss, attached and arranged in such specified manner "as to cause the counterweights to balance the weight of the moving span in all positions except when down, when the span is to preponderate not more than 1 per cent. in order to produce a downward reaction at the outer end." The sole purpose of the counterweights was to balance the movable span of the bridge when in operation.

When the specifications were prepared, the necessary counterweight for that purpose could not, as the evidence shows, be accurately fixed. The contractor agreed to supply enough for that purpose. He did not agree to do more. If the span, built according to the specifications, required for its successful operation more than the estimated amount of counterweights, he must furnish them. Dean v. Mayor, etc., of New York, 167 N. Y. 13, 60 N. E. 236; Sullivan v. President, etc., of Village of Sing Sing, 122 N. Y. 389, 25 N. E. 366; Lentilhon v. City of New York, 102 App. Div. 548, 92 N. Y. Supp. 897; affirmed 185 N. Y. 549, 77 N. E. 1190. Conversely, if less than the estimated amount was sufficient, by furnishing that amount he did all his contract required.

It appears that the span as actually built was not in accordance with the original plans. The result was that by using thinner planking the weight of the span was reduced by 20,000 pounds. A change in the stringers of the bridge and the addition of street car rails and fasteners added 53,682 pounds. The net addition to the weight of the span was 33,682 pounds. This added weight made necessary an additional amount of counterweights to the extent of 47,084 pounds. These were furnished by plaintiff. Defendant agreed to pay plaintiff for counterweights, which it was not required to furnish under its original contract, at the rate of 2 cents per pound. Plaintiff being only required to furnish counterweights sufficient to balance the span built according to the original plan, it was therefore entitled to payment for the net amount of additional weights required to balance the span as actually built at the rate agreed upon, amounting to $941.68. To apply upon this amount defendant has paid $490. The balance of $451.68, with interest, plaintiff is entitled to recover of defendant.

In addition to this amount, plaintiff's recovery in the trial court included the sum of $238, which is arrived at by treating the reduction of 20,000 pounds in weight of the span, due to the change in planking, as a cancellation of the corresponding amount of counterweights to be furnished under the contract, being 28,000 pounds, and again charging defendant with this 28,000 pounds as additional counterweights furnished. Plaintiff had agreed to allow for counterweights canceled at the rate of $1.15 per 100. The net result of this method of computation is, therefore, that plaintiff would allow $1.15 per 100 on 28,000 pounds as canceled, and receive $2 per 100 on this same 28,000 pounds as additional counterweights furnished under its modified contract, making a difference of 85 cents per 100 in its favor. But it is conceded that no cancellation of counterweights was actually made. On the contrary, not only the amount which plaintiff was required to fur-

nish under its original contract was required and furnished, but a considerable amount in addition thereto, as has already appeared.

The judgment should be modified, by reducing plaintiff's recovery of damages to the sum of $517.85 as of the date of the judgment, and, as modified, affirmed, without costs of this appeal to either party. All concur.