BEAVER ENGINEERING AND CONTRACTING COMPANY, Plaintiff, *v.* THE CITY OF NEW YORK and Another, Defendants.

Supreme Court, New York County, April 9, 1931.

*Bandler, Haas & Collins* [*John F. Collins* and *Harry Merwin* of counsel], for the plaintiff.

*Arthur J. W. Hilly, Corporation Counsel* [*Cornelius Bregoff* of counsel], for the defendant City of New York.

HAMMER, J. The plaintiff corporation entered into contract No. 84069 with the defendant city of New York through its commissioner of water supply, gas and electricity. The contract was " For furnishing, delivering and laying water mains and appurtenances, transferring taps, rearranging connections and setting valves and hydrants *on existing mains* in Avenue A, Amsterdam, Lexington, Madison, Payson and Second Avenues, Allen, East 30th, East 40th, West 102nd, West 44th, West 45th, West 65th, West 158th and West 215th Streets, Borough of Manhattan."

The National City Realty Corporation was originally a defendant. As to it, on trial the action was discontinued.

There are two causes of action in the complaint. The second cause of action was withdrawn at the trial. The contract was for the " lump " sum of $34,630. The first cause of action is for the sum of $2,198.88, with interest, for the cost of installing fifty-two house service connections claimed by the plaintiff not to have been included in the contract and to have been ordered by the city's engineer under his claim that it was included in the contract and done by the plaintiff under protest.

The commissioner advertised for bids prior to May 20, 1927, for a contract under the above title. All the work called for under the contract, including the work in dispute, has been performed and a certificate of completion has been issued. This certificate plaintiff claims is false, untrue and not made in good faith and under a misconstruction of the terms of the contract in that it did not certify the sum of $2,198.88 for the work in dispute.

The contract contains the following provision:

" 2. The proposal for bids, bid, *specifications, and the drawings described in the specifications and the bond,* are hereby made a part of this contract with like effects as if herein set out in full, and the term ' contract ' as herein used includes all of said instruments. *All work and materials mentioned in the specifications and not shown on the drawings, and all work and materials shown on the drawings and not mentioned in the specifications, shall be furnished, performed and done as if the same were both mentioned in the specifications and shown on the drawings.*"

The proposal for bids provided:

" 8. The number and sizes of straight pipe, special and valve box castings, valves and hydrants to be furnished by the Contractor under this contract are as listed herein. Prior to their fabrication, however, the Department shall have the right of modifying the list of special castings without increasing their total weight, either by varying the number and kind given or by substituting other castings for same; but such variation or substitution will not be made for more than ten per cent (10%) of the total weight of special castings listed. Any additional straight castiron pipe, special and valve box castings, valves and hydrants required to complete the work called for under the contract will be furnished to the Contractor by The City on the ground at one of the Department yards located in the Borough in which the work under this contract is to be done, unless otherwise noted on the drawings. The cost of loading, hauling and unloading the material shall be included in the lump sum bid. [Here follows a list of cast iron pipes, special castings, etc.]

" 13. The drawings accompanying the specifications and the work to be done are referred to in the contract ' General Provisions for Water Main Specifications,' Section 1, as follows:

" ' The work to be done includes furnishing and delivering all the labor and materials necessary or proper to lay and construct the water mains and appurtenances in the streets or places mentioned in the proposal and shown on the drawings signed by the Chief Engineer, and numbered 18346-X herewith made a part hereof. During the progress of the work the City may furnish additional

drawings explanatory of those hereinbefore mentioned, which will thereupon become a part hereof.'

" 14. Bidders shall submit a lump sum bid for furnishing all the material listed in section 8 herein and for furnishing all other materials and all labor required to lay and install all the mains and appurtenances shown on the contract drawings, complete, including the removal of any mains or appurtenances where called for. The lump sum bid shall include the cost of loading and unloading and of hauling back all materials not used in the work to one of the yards of the Department of Water Supply, Gas and Electricity. Unused material furnished by the City shall be returned to the yard from which it was originally taken by the Contractor.

" 15. The quantities of the work to be done and the materials to be furnished as herein estimated and as shown on the drawings are approximate only, and The City shall not be held responsible that any of the quantities shall strictly obtain in the construction of the work. Bidders must judge for themselves as to such quantities and as to the character of the work to be done and the materials to be furnished and the other circumstances affecting the cost of the performance of the work.

" Bidders are particularly cautioned against the submission of a bid before making a personal examination of the location proposed for the work under the contract, and familiarizing themselves with all existing conditions and with all difficulties to be met with during construction.

" Information is given to assist bidders in reaching their own conclusions as to the requirements of the contract to be entered into."

A copy of the plan (No. 18346-X) was furnished to the contractor. There is a note on this plan and copy reading as follows:

" All house services (about 160) shall be transferred by the contractor from the mains shown to be abandoned or removed to the new parallel mains. * * *

" Locations of *new* and *existing mains* and appurtenances: The location of new mains, valves, hydrants and connections shown on the plan and arrangement of the connections are diagramatic and approximate only; the exact locations and arrangements will be given by the engineer during the progress of the work.

" The locations of the *existing mains* which are to be abandoned and *from which services are to be transferred* as shown on the plan are also approximate only; the lengths of the new service connections will vary accordingly, and no extra compensation will be allowed to the contractor for the lengths of services in excess of

that which may be indicated or inferred from the locations of the mains as shown on the plan."

*On the plan* and copy *the six-inch main to be abandoned* on Allen street, West Forty-fourth street, West Forty-fifth street and East Thirtieth street *is indicated by a broken line and existing parallel mains* on those same streets are indicated by a thin unbroken line. *The new mains to be laid by the contractor* on other streets covered by the contract are shown on the *same plan* and copy by a *heavy straight line.* The specifications, so far as applicable, read as follows:

" SPECIFICATIONS FOR LEAD PIPE FOR EXTENDING HOUSE SERVICE CONNECTIONS

" *Standard Water Main Specifications, Form No. 13*
' *Dated January 1, 1925*

" 1. *Work included.* Where it is necessary, in the opinion of the Engineer, to cut house water service to lay new mains or where the services are to be extended in transferring *from an existing main to a new, or to an existing parallel main,* the Contractor shall furnish the necessary lead pipe for such work and all other materials and labor incidental to making the connection complete, including the cutting of the service and the stopping of the flow of water through the same."

" SPECIFICATIONS FOR WITHDRAWING AND REPLACING HOUSE CONNECTIONS.

" *Standard Water Main Specifications, Form No. 21*
" *Dated January 1, 1925*

" 1. *Replacing connections.* The Contractor *shall replace all house service or other connections found on the mains* which are to be *abandoned* or *removed.*"

The plaintiff's claim is that it was obligated under the contract only to transfer house services for mains shown to be abandoned or removed to new mains laid by the plaintiff. It asserts that it relied upon that part of the note on the plan and copy reading: " All house services (about 160) shall be transferred by the Contractor from the mains shown to be abandoned or removed to the new parallel mains " in making its bid. It asserts that it examined the location of the work before its bid was submitted and did so on the strength of the above-mentioned clause, assuming that the figures 160 were an error for 60 for the reason that it found only 57 on the streets where new mains were laid by the plaintiff and did not anticipate that it would be asked to transfer the 52 house services on the streets in which the contract did not require the installation by plaintiff of new mains. If the work in dispute was not called for in the contract the plaintiff clearly would be

entitled to recover the fair and reasonable cost of performing such work. (*Borough Construction Co.* v. *City of New York,* 200 N. Y. 149; *Gearty* v. *Mayor, etc., of N. Y.,* 171 id. 61; *Lentilhon* v. *City of New York,* 102 App. Div. 548; affd., 185 N. Y. 549; *People ex rel. Powers & M. Co.* v. *Schneider,* 191 id. 523.)

There is no serious dispute as to the value of the work which I find was of the fair and reasonable cost of $2,198.88. Under the provisions of the proposal for bids, the bid, the specifications, and under the drawings described in the specifications and the bond, particularly those above referred to, I am of the opinion, however, that the plaintiff was not mislead in preparing his bid and reasonably should have known that the house services which in all numbered 109 were to be transferred from the abandoned mains to the existing parallel mains as well as to the new mains which under the contract the plaintiff contractor was required to lay. The specifications under Form 13 and Form 21 specifically directed the attention of the contractor to this requirement. Section 1 of Form 13 reads as follows: " Where it is necessary, in the opinion of the Engineer, to cut house water service ·to lay new mains or where the services are to be extended in transferring from an existing main to a new *or* to an existing parallel main, the contractor shall furnish," etc.

Water mains are laid in streets for the purpose of furnishing water to the houses and the occupants thereof abutting upon such streets. With this provision and the others referred to, it must fairly be assumed that the contractor was not misled by the note upon the plan or copy. The estimated number 160 together with the words " All house services shall be transferred by the contractor from the mains shown to be abandoned," would in my opinion not only put the ordinary bidder for such work on notice that more than 57 house services were to be transferred but should have particularly put the plaintiff who had done much work of this character for the city on notice that 109 services were to be transferred. The words " all house services " in my opinion clearly indicated the 109 which were actually to be transferred from the mains shown to be abandoned. The provisions referred to and the symbols on the plan and copy clearly indicated that a considerable part of the house services were to be transferred to existing mains.

" All house services " sensibly refers to those in streets named in the contract where it is indicated mains are to be abandoned or removed; otherwise buildings and their occupants would be without water. About 160 house services more reasonably means the actual 109 for which the city contends, than the 57 for which the plaintiff contractor claims it was used in error.

The words " abandoned or removed " clearly refer to those mains the use of which was being discontinued. Such discontinuance, however, was to be accompanied by the transfer of the water and house services to other mains, some of which were existing and parallel and others were to be the new mains laid by the contractor.

This view is confirmed by the contract provisions, specifications and plan references indicated above, particularly by the varied conditions which required different methods of transfer of house services to new or existing parallel mains from mains to be abandoned or removed. These conditions and methods are set forth in section 1 of Form 13 and are quoted above.

It appears that in some instances the new mains laid by plaintiff under the contract might not be " parallel mains." In " Specifications for Removing Existing Mains, Valves, Valve Boxes and Hydrants, Standard Water Main Specifications, Form No. 22," attached to the contract it is provided:

" Three general methods may be adopted where the existing main is to be removed or abandoned, as follows:

" The new main may be laid in approximately the same location as the existing main, necessitating the removing of the existing main before the new main is laid.

" The new main may be laid in the trench alongside of the existing main and about one foot from the same.

" The new main may be laid so that the existing main will not come within the limits of the trench excavated for the laying of the new main."

Accordingly I am convinced that where the word " parallel " is used it refers to mains not laid by the plaintiff, and which at the time the contract was made were existing parallel to mains to be abandoned under its provisions.

The note in question must be understood as if reading: " All house services (about 160) shall be transferred by the contractor from the abandoned or removed mains either to the new mains or to the existing parallel mains."

It is my opinion, therefore, that the work for which the plaintiff claims extra compensation was included in the contract.

Plaintiff's motion for a direction of verdict is denied. Defendant's motion for a direction of verdict is granted. Verdict is directed for defendant. Plaintiff may have exceptions. Thirty days' stay of execution and sixty days to make a case on appeal.